ARNOLD L. BEIZER *v.* MICHAEL GOEPFERT
ARNOLD L. BEIZER *v.* MICHAEL GOEPFERT ET AL.
(10504)

DALY, FREEDMAN and CRETELLA, Js.

Argued May 7—decision released August 18, 1992

*Mark R. Leder,* for the appellant (plaintiff).

*James F. Aspell,* for the appellee (named defendant in each case).

*Neil Johnson,* pro se, the appellee (defendant in the second case).

DALY, J. The plaintiff appeals from the trial court's judgment in favor of the defendants, Michael Goepfert and his attorney, Neil Johnson, rendered in accordance with the report of an attorney factfinder. The plaintiff claims that the trial court improperly (1) referred these matters to an attorney factfinder, (2) denied his right to a trial by jury, (3) rendered judgment because the evidence was insufficient to support a judgment for the defendants, and (4) rendered judgment without the benefit of the transcript from the proceedings before the attorney factfinder. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On July 4, 1986, Goepfert entered into an oral agreement for professional services with his friend, Johnson, an attorney, to handle Goepfert's personal injury claim

against the town of Tolland on a 10 percent contingency fee. At the time of the agreement, Johnson was an associate for the law firm of Teitenberg and Wallace.

In December, 1986, Johnson began working for the plaintiff's law firm. On December 31, 1986, the defendants, Michael Goepfert and Neil Johnson, signed a professional services agreement between themselves using a standard form contract supplied by the plaintiff's law firm. Johnson crossed out the 33⅓ percent contingent fee figure in the plaintiff's standard form professional services contract and inserted the 10 percent figure previously agreed to in July. In August, 1987, Goepfert's case was settled for $34,000 by Johnson with guidance from the plaintiff as to the proper settlement figure. Goepfert agreed to pay the 10 percent fee set forth in the contract, but refused to pay the plaintiff's standard fee of 33⅓ percent. The plaintiff withheld his standard fee and brought suit claiming he was entitled to the full 33⅓ percent.

On August 18, 1988, the plaintiff instituted a two count action against Goepfert seeking an award of the 33⅓ percent fee for services rendered on the settlement of Goepfert's personal injury claim. The first count was based on breach of contract and the second count was based on quantum meruit. This complaint was signed by the plaintiff. The plaintiff filed an amended complaint dated December 30, 1988, adding Johnson to the action. The plaintiff's amended complaint alleged that Johnson changed the contingency fee agreement without authority. This amended complaint was signed by Martin B. Krulewitz, an associate of the plaintiff's law firm.

On July 28, 1989, the plaintiff commenced a second action asserting that the defendants conspired to defraud the plaintiff and that the defendant Johnson breached his employment contract and tortiously inter-

fered with the contract relationship between the plaintiff and Goepfert. Goepfert filed a counterclaim against the plaintiff alleging breach of contract and wrongful refusal to pay him the disputed 23⅓ percent of the $34,000. On February 27, 1989, the plaintiff claimed the first action for the trial list as a nonjury matter. The plaintiff claimed the second action for the trial list on November 20, 1990, and identified this action as a jury matter on the claim for the trial list. Neither party filed a jury docket claim slip pursuant to General Statutes § 52-215[1] nor did either party pay the $100 jury fee required by General Statutes § 52-258.[2] The case was never placed on the jury docket.

The pleadings were subsequently closed. On February 20, 1990, the trial court granted the plaintiff's motion to consolidate both matters. The matters were referred to an attorney factfinder, Stephen B. Delaney. There were no objections to the referral of this matter.

The factfinder found that the plaintiff failed to meet his burden of proof in both actions. He recommended that judgment be rendered for the defendants on both actions and in favor of the named defendant on count one of the counterclaim, which sounded in breach of contract and was based on the plaintiff's wrongfully holding onto the disputed portion of the settlement. The plaintiff filed objections to the factfinder's findings and the objections were overruled by the trial court. The trial court rendered judgment in favor of the defend-

---

[1] General Statutes § 52-215 provides in pertinent part: "The following-named classes of cases shall be entered in the docket as jury cases *upon the written request of either party made to the clerk within thirty days after the return day . . . .*" (Emphasis added.)

[2] "[General Statutes] Sec. 52-258. JURY FEES. The jury fee in civil actions shall be one hundred dollars to be paid at the time the case is claimed for the jury by the party at whose request the case is placed upon the jury docket. The jury fee shall be taxed in favor of the party paying the jury fee in the bill of costs in the action, if final judgment thereon is rendered in his favor."

ants on the complaint and awarded Goepfert $7933 plus costs on the counterclaim. The plaintiff appealed.

## I

The plaintiff claims that these matters should not have been referred to an attorney factfinder because the requirements of General Statutes § 52-549n were not satisfied.[3] Specifically, the plaintiff argues that the Superior Court lacked subject matter jurisdiction to refer the case to an attorney factfinder because these matters involved tort claims and did not exclusively sound in contract. The plaintiff further contends that that referral was improper because he requested a jury trial.

A claim that the court lacks subject matter jurisdiction cannot be waived. *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 499, 508 A.2d 415 (1986). "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We find that in this case the trial court's referral of this matter to an attorney factfinder was proper because the requirements of General Statutes § 52-549n were satisfied.

The phrase "any contract action" in § 52-549n does not require that every claim in a case be a purely con-

---

[3] General Statutes § 52-549n provides in pertinent part that "the court, in its discretion, may refer to a fact-finder for proceedings authorized pursuant to this chapter, any contract action pending in the superior court in which only money damages are claimed and which is based upon an express or implied promise to pay a definite sum, and in which the amount, legal interest or property in demand is less than fifteen thousand dollars exclusive of interest and costs. Such cases may be referred to a fact-finder only after the pleadings have been closed, a trial list claim has been filed, no claim for a jury trial has been filed at the time of reference, and the time prescribed in section 52-215 for filing a jury trial claim within thirty days of the return day or within ten days after the issue of fact has been joined has expired." See also Practice Book § 546D.

tractual action, as the plaintiff contends. Section 52-549n allows "any contract action" to be referred to a fact-finder if only money damages are claimed and if the amount in controversy does not exceed $15,000. "The objective of statutory construction is to give effect to the intended purpose of the legislature." *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). " 'When the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' " *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1174 (1990), quoting *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987). Where the language is ambiguous " 'this court is to be guided by the language, purpose and legislative history of the statute in question.' " *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 102, 596 A.2d 374 (1991), quoting *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987). The meaning of "any contract action" as used in this statute is not specifically defined.

The legislative history sheds no light on the intended construction of the phrase "any contract action." According to the statement of purpose of Public Acts 1982, No. 82-441, which became General Statutes §§ 52-549n through 52-549aa and which deals with both factfinders and arbitrators, the statute is intended "[t]o establish, in an effort to reduce the pending civil caseload, a system of fact-finders for certain non-jury cases and a system of arbitration for jury cases . . . ." The statute was adopted to ease the backlog of cases with which the judiciary is plagued. 25 H.R. Proc., Pt. 24, 1982 Sess., p. 7665, remarks of Representative Richard D. Tulisano. This does not lend itself to a narrow construction of the phrase "any contract action." The legislature intended to free the judiciary from the

factfinding tasks in simpler, nonjury cases involving $15,000 or less. This indicates that the legislature preferred to include rather than to exclude cases.

The phrase "any contract action" also lends itself to a broad construction of what claims are included. "Any contract action" can be contrasted with "only contract actions." The former is much less restrictive. "Any" is defined as "one or some of whatever kind or sort . . . one or some however imperfect used as a function word to indicate one that is selected with indifference to quality." Webster, Third International Dictionary. On the other hand, "only" is defined as "a single solitary fact or instance or occurrence: as just the one simple thing and nothing more or different: simply, merely, just." Webster, Third International Dictionary. "Any contract action" implies a broad concept of what constitutes a contract action. Furthermore, there is no language in the statute that limits "any contract action" to claims sounding exclusively in contract.

There are no other statutes that restrict the meaning of "any contract action" under § 52-549n. Section 52-549n does provide for arbitration in "any civil action in which the amount, legal interest or property in demand is less than fifteen thousand dollars exclusive of interest and costs and in which a claim for trial by jury and a claim for the trial list have been filed." This statute provides greater jurisdiction to the arbitrator than the factfinder in that an arbitrator may hear "all *civil* actions," but it does not limit the language "any contract action" of § 52-549n to purely contractual cases. Given the purpose of § 52-549n and the meaning of "any contract action," this statute does not necessarily exclude cases with a mixture of claims based in contract and tort.

We now consider whether the claims in this case were contractual in nature. In *J. Dunn & Sons, Inc.* v. *Para-*

*gon Homes of New England,* 110 N.H. 215, 265 A.2d 5 (1970), the New Hampshire Supreme Court set forth the considerations for determining the nature of a claim. In *J. Dunn & Sons, Inc.,* the court examined whether the pleadings sounded in contract for purposes of deciding if an arbitration clause was applicable to the dispute. The New Hampshire Supreme Court presented the following considerations for determining the classification of a claim which may be of assistance in the context of § 52-549n: "The source or origin of the duty alleged to have been violated; the nature of the grievance; the character of the remedy such facts indicate; [and] the type of damages sought." Id., 217, citing 1 Am. Jur. 2d Actions § 8. "The purpose of the contract duty is to secure the receipt of the thing bargained for, while the tort duty which results from the contract relation of the parties is that a party must refrain from conducting itself so as to cause a particular harm to another party." Id., 217–18, citing 1 Restatement (Second), Torts § 4, comment c. We shall determine the nature of the present case on the basis of these factors.

All of the plaintiff's claims are based on the professional services contract signed by Johnson and Goepfert and on Johnson's employment contract with the plaintiff. The facts alleged in both complaints involved the creation and alteration of the fee agreement and the authority of Johnson under his employment agreement. In both complaints, the plaintiff sought damages in the amount of the difference between the 33⅓ percent contingent fee and the 10 percent fee provided for in the altered contract. These damages "secure the receipt of the thing bargained for." Id. These factors indicate that all of the claims involved in the present case are contractual in nature.

As to the specific claims, the allegations that Goepfert breached the professional services agreement and

that Johnson breached his employment contract are both contract claims. The claim for recovery in quantum meruit for the value of the work performed is contractual in nature and this is not disputed by the plaintiff. The plaintiff also does not dispute that Goepfert's counterclaim sounded in contract.

The plaintiff contends that the tortious interference with a contract relationship and the conspiracy to defraud claims, set forth in the complaint in the second suit, are tort claims. Both claims are basically contract actions despite the fact that the plaintiff encoded the second suit as sounding in tort. This court has held that the coding of an action does not determine the basis of the claim for purposes of § 52-549n. *McKeever* v. *Von Reiter,* 15 Conn. App. 194, 196, 544 A.2d 242 (1988).

"The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." *Hart, Nininger & Campbell Associates, Inc.* v. *Rogers,* 16 Conn. App. 619, 629, 548 A.2d 758 (1988). The contractual relationship between the plaintiff and Goepfert is central to this claim. The pleadings in support of this claim put forward facts related to the creation of the professional services contract and pray for compensatory damages in the amount of the difference between the disputed fees. This claim is a contract claim for purposes of § 52-549n.

The plaintiff's allegations with respect to the claim that the defendants conspired to defraud the plaintiff out of the fee set forth in his standard form contract are also contractual in nature for purposes of § 52-549n. This claim has been categorized by our Supreme Court as a tort claim. *Rosenblatt* v. *Berman,* 143 Conn 31, 39, 119 A.2d 118 (1955). As previously discussed, how-

ever, under § 52-549n a case need not sound exclusively in contract. This claim is so intertwined with the contract that it falls under "any contract action" of § 52-549n. The professional service contract was the vehicle of the alleged conspiracy to defraud. The plaintiff alleged that the defendants agreed to alter the contract after its execution to deprive the plaintiff of the full fee. The creation and alteration of the professional services contract is at the heart of the alleged conspiracy to defraud. Even though conspiracy to defraud is generally classified as a tort claim, it is a contract claim under § 52-549 because the conspiracy to defraud in this case was so intertwined with the formation, execution, and breach of the professional services contract.

The plaintiff next contends that the trial court lacked subject matter jurisdiction because he claimed the case for jury trial. The plaintiff, however, failed to claim this matter properly for jury trial. First, he failed to file a jury docket claim slip as required by § 52-215. Second, he failed to pay the jury fee of $100 as required by § 52-258. The fact that the plaintiff indicated on the claim slip for the trial list, filed on November 20, 1990, that the second action was a jury matter does not excuse the plaintiff's violation of the requirements for a jury trial. Because no claim for a jury trial was properly filed by the plaintiff, the referral by the trial court to the factfinder was within its authority.[4] Thus, the

---

[4] The plaintiff claims that he had no opportunity to appeal from the factfinder's determinations. It is important to note that the plaintiff exercised his right to object to the factfinder's determinations under Practice Book § 546H. "A party may file objections to the acceptance of a finding of facts on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the fact-finder erred in rulings on evidence or in other rulings, or that there are other reasons why the finding of facts should not be accepted.

"Objections must be filed within fourteen days after the filing of the finding of facts." Practice Book § 546H.

The plaintiff filed his objections and the trial court overruled them.

referral of this matter did not implicate the subject matter jurisdiction of the trial court because it was properly referred under § 52-549n.

We will now consider whether the plaintiff waived his right to object to the referral of his case after the factfinder made his findings. Both the plaintiff and the defendants consented to the referral of this matter to an attorney factfinder. Before the trial court referred this case to the attorney factfinder, the plaintiff knew of the facts on which his objections are now based. The appropriate time for the plaintiff to challenge the referral by the trial court would have been, at the latest, before the attorney factfinder began hearing the case. *Bowman* v. *1477 Central Avenue Apartments,* 203 Conn. 246, 251, 524 A.2d 610 (1987). As our Supreme Court explained in *Bowman,* there is a strong policy behind this requirement. It discourages litigants from reserving their objections to attack an unfavorable outcome. Id., 251–52. Thus, the plaintiff waived his right to challenge the referral of this matter to an attorney factfinder by not raising these objections before the commencement of the hearing.

## II

The plaintiff further claims that the trial court's referral violated his right to trial by jury according to article IV of the amendments to the constitution of Connecticut. Article IV provides that the "right of a trial by jury shall remain inviolate." "Litigants in a civil case have a constitutional right to have a question of fact decided by a jury." *Speed* v. *DeLibero,* 19 Conn. App. 95, 104, 561 A.2d 959 (1989), rev'd on other grounds, 215 Conn. 308, 575 A.2d 1021 (1990). "Nevertheless, such a right may be subjected to reasonable conditions and regulations." *Shelby Mutual Ins. Co.* v. *Bishop, Kirk & Saunders, Inc.,* 13 Conn. App. 189, 192, 535 A.2d 387 (1988).

As discussed previously, the plaintiff failed to follow the statutory requirements for placing a case on the jury docket. Our Supreme Court has determined that the requirements for requesting a trial by jury do not deprive the parties of their right to a jury trial and they do not "impose any arbitrary or unreasonable requirements upon one who desires such a trial." *Leahey* v. *Heasley,* 127 Conn. 332, 336, 16 A.2d 609 (1940). Therefore, because the requirements of §§ 52-215 and 52-258 have not been satisfied, the plaintiff has not been denied his right to a jury trial because of the referral of this matter to an attorney factfinder.[5]

### III

The plaintiff next claims that there was insufficient evidence to support the conclusions of the factfinder on which the trial court rendered judgment for the defendants. The plaintiff argues that the trial court's findings involving the validity and enforceability of the written agreement were improper.

A challenge to the trial court's factual findings requires that the plaintiff establish that the factual findings were clearly erroneous. Practice Book § 4061; *Cashman* v. *Calvo,* 196 Conn. 509, 516, 493 A.2d 891 (1985). " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). Great deference is given to the trial court's findings because the trial court is responsible for weighing the evidence and determining the credibility of

---

[5] Because the plaintiff did not properly request a jury trial in the first place, we need not reach the question of whether he waived his right to a jury trial.

witnesses. *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.,* 218 Conn. 703, 708, 590 A.2d 968 (1991).

The plaintiff disputes the factfinder's conclusion "[t]hat on December 31, 1986, in compliance with state statute, the defendants, Neil Johnson and Michael Goepfert, memorialized their agreement pertaining to the 10 percent contingency fee." There is sufficient evidence to support all of the trial court's conclusions as well as this finding of fact. The testimony of Johnson and Goepfert, though not uncontradicted, showed that the defendants, who were friends, entered into an oral agreement in July, 1986, whereby Johnson would represent Goepfert for a 10 percent contingency fee. Johnson testified that he had understood it to be a normal practice for attorneys to charge lower fees to relatives and friends, such as Goepfert.

During the interim between the oral contract and the signing of the standard form contract, the legislature enacted § 52-251c which required that all contingent fee agreements be reduced to writing. This agreement was reduced to writing on December 31, 1986, after Johnson's employment with Beizer commenced. Both defendants testified that before signing the standard form professional services agreement, Johnson changed the fee clause to provide for a 10 percent fee. Finally, the professional services contract signed by both defendants that had been altered to provide for a 10 percent fee was in evidence. It is reasonable, given this evidence, to conclude that the written contract was merely a memorialization of the original, oral professional services contract and, because of this, the 10 percent contingency fee was valid. Therefore, the factual findings as adopted by the trial court were not clearly erroneous.

The plaintiff also contends that the attorney factfinder did not properly consider the credibility of the

witnesses in determining his findings. The plaintiff
asserts that the testimony of his witness, a friend of
the plaintiff who practiced law in the same building as
the plaintiff, was credible and that the factfinder should
have believed him. He contends that Johnson's testi-
mony was not credible and indicates that, as such, the
factfinder should not have relied on it. The plaintiff
seeks to have this court determine the credibility of the
witnesses. We will not retry the facts or assess the
credibility of the witnesses in this case. *Eslami* v.
*Eslami,* 218 Conn. 801, 808, 591 A.2d 411 (1991); *Sip-
pin* v. *Ellam,* 24 Conn. App. 385, 388, 588 A.2d 660
(1991). The finder of fact is in a better position to deter-
mine the credibility of witnesses and the weight to be
accorded their testimony. *Oak Leaf Marina, Inc.* v.
*Ertel,* 23 Conn. App. 91, 94, 579 A.2d 568, cert. denied,
216 Conn. 827, 582 A.2d 206 (1990); B. Holden &
J. Daly, Connecticut Evidence § 125a. The trial court
is not bound by the uncontradicted testimony of any
witness. *Bieluch* v. *Bieluch,* 199 Conn. 550, 556, 509
A.2d 8 (1986); *Johnson* v. *Fuller,* 190 Conn. 552, 556,
461 A.2d 988 (1983). The fact that some of the state-
ments by the plaintiff's witnesses remained uncon-
troverted does not mean that the trier of fact was
required to accept that testimony. The factfinder's con-
clusions were based on sufficient evidence and were
not clearly erroneous.

## IV

The plaintiff next claims that because neither the
attorney factfinder nor the trial court had the trial tran-
scripts when making their determinations the judgment
cannot stand. We disagree.

There is no rule requiring the factfinder or the trial
court reviewing the factfinder's report to order a tran-
script. In *Wilcox Trucking, Inc.* v. *Mansour Builders,
Inc.,* 20 Conn. App. 420, 567 A.2d 1250 (1989), cert.

denied, 214 Conn. 804, 573 A.2d 318 (1990), pursuant to Practice Book § 546J,[6] the trial court ordered the defendant, who had objected to the findings of the fact-finder, to provide the transcripts before the court made its decision to reject the determinations of the fact-finder. Thus, a trial court may ask that transcripts be provided, but there is nothing that requires that the trial court have the transcripts before rendering judgment.

The plaintiff failed to make the transcripts available to either the factfinder or the trial court even after objecting to the findings of fact. If the plaintiff felt that transcripts were crucial to his objections, he should have submitted them to the trial court. The plaintiff could have but did not ask the trial court to delay its ruling on the objections until the transcript could be obtained. The trial court properly rendered judgment in this case.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Practice Book § 546J provides in pertinent part: "After review of the finding of facts and hearing on any objections thereto, the court may take the following action: (1) render judgment in accordance with the finding of facts; (2) reject the finding of facts and remand the case to the fact-finder who originally heard the matter for a rehearing on all or part of the finding of facts; (3) reject the finding of facts and remand the matter to another fact-finder for rehearing; (4) reject the finding of facts and revoke the reference; (5) remand the case to the fact-finder who originally heard the matter for a finding on an issue raised in an objection which was not addressed in the original finding of facts; or (6) take any other action the court may deem appropriate."

[7] The defendants claim for the first time on appeal that the plaintiff's complaints are void under Connecticut law because the plaintiff and his employees improperly signed the complaints involved in this matter to which the plaintiff is a party. In *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 610 A.2d 1260 (1992), our Supreme Court decided that because the policy reasons behind this rule no longer exist, an attorney may sign the writ in a case to which he is a party. The Supreme Court's decision controls the disposition of this claim and, therefore, the defendants cannot prevail on it.