[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action brought by the plaintiff, Deutsche Bank Luxembourg, S.A. (Deutsche Bank), against a number of defendants, including Robert A. Schmitz and Marion B. Schmitz. The action was brought in July, 1988, to foreclose mortgages given by one Karl L. Hermann on his property on Round Hill Road, Greenwich, to secure loans he had received from the plaintiff bank between 1984 and 1986, plus a 1980 loan from Credit Suisse which had been assigned to plaintiff. These loans, in turn, were CT Page 10672 guaranteed by Mr. and Mrs. Schmitz through a "Limited Guaranty" which was secured by two mortgages on contiguous pieces of property in Greenwich, including their residence. The guaranty was limited to $1,000,000 and was to expire in 1990.
In addition, on September 23, 1985 Hermann and the Schmitzes executed a promissory note for $60,000, which was also secured by mortgages of the same two properties by Mr. and Mrs. Schmitz. In 1986 the Schmitzes and Hermann executed a $66,000 note in substitution of the 1985 note. The background for these transactions is that Mr. Schmitz was an inventor and researcher in biotechnology. Hermann was an investor and he had interested Deutsche Bank in loaning money to further Mr. Schmitz's research in that field. Hermann secured a line of credit by granting mortgages on his home. In order to further secure these loans, the Schmitzes executed the Limited Guaranty and mortgages in question. Deutsche Bank advanced money starting in 1984. In 1985 Hermann and Mr. Schmitz formed a corporation, America Bioactive Colloids, Inc. (AMBICO), to carry out Mr. Schmitz's endeavors.
In 1987 Hermann defaulted on the loans, and in 1988 Deutsche Bank commenced this action against both the Hermanns and the Schmitzes. The first three counts were directed against Hermann and his wife, Irmgard J. Hermann, and this court entered judgment in favor of Deutsche Bank in 1989 in the approximate amount of $2,500,000. The Hermanns sold their home and approximately $1,628,000 was applied to the debt, leaving a balance at that time of $864,000. Counts four and five are directed against the Schmitzes seeking to foreclose the two mortgages.[1] The fourth count refers to the Limited Guaranty, and the fifth count to the $66,000 promissory note. The Limited Guaranty was executed October 9, 1984, by Mr. and Mrs. Schmitz "in consideration of any financial accommodations given to or to be given to Karl L. Hermann and Irmgard J. Hermann."[2] Mr. and Mrs. Schmitz did not deny that they executed the guarantee, and at one point in the trial Mr. Schmitz testified: "the fact of the matter is that I had been willing and certainly willing to stand behind Karl Hermann."
In July, 1989, Mr. and Mrs. Schmitz filed a number of special defenses,[3] and a counterclaim alleging that the plaintiff bank had breached its obligations of good faith and fair dealings; had breached a fiduciary duty owed to the shareholders of AMBICO, among whom was Mr. Schmitz; and had CT Page 10673 violated General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), all with an attendant "right of set-off." In June of 1991 counsel for the Schmitzes were permitted to withdraw their appearance, and Mr. and Mrs. Schmitz have since July, 1991 appeared pro se, including at the trial of this action.
This case was referred to the attorney state trial referee program, General Statute 52-434(a)(4), Practice Book 428 et seq., and the attorney trial referee, Edwin K. Dimes, Esq., recommended that judgment enter in favor of the plaintiff Deutsche Bank.[4]
The attorney trial referee made a number of factual findings, among which were: (1) the Schmitzes jointly and severally executed a guaranty limited to $1,000,000 on October 9, 1984 to the plaintiff Deutsche Bank; (2) the Schmitzes mortgaged (or put into a trust agreement) their home and another property as security for this guaranty; (3) the mortgages/trust agreements were assigned to a Deutsche Bank trustee on September 8, 1987 and were duly recorded in the appropriate land records; (4) Deutsche Bank was, at the time of trial, owner of the guaranty and equitable owner of the mortgages; (5) pursuant to a judgment entered on February 6, 1989 the Hermanns owed Deutsche Bank $2,492,007.63; (6) on February 15, 1989 Deutsche Bank received $1,628,104.55 from the sale of the Hermanns' Greenwich home; (7) on November 26, 1991 the Hermanns owed Deutsche Bank $1,107,715.57, including interest which continued to accrue at 6%; (8) Deutsche Bank received no further payments from the Hermanns; (9) Deutsche Bank, not having received payment from the Schmitzes, despite demand, sought to foreclose the mortgages from these defendants; (10) the plaintiff was owed $1,000,000 by the Schmitzes, the amount of the Limited Guaranty; (11) as to the fifth count of the complaint, the $66,000 promissory note had not been paid by Hermann or Mr. and Mrs. Schmitz, and there was due and owing the plaintiff the sum of $99,326.67, including interest at 8% from August 24, 1992, the date of the referee's report, to the date of judgment; and (12) the guaranty provided for payment of costs of collection and attorney's fees.
The referee concluded that Mr. and Mrs. Schmitz owed the plaintiff the sum of $1,000,000 on the fourth count of the complaint, and $99,326.67 on the fifth count, and attorney's fees of $35,000 for the bank's attorneys, a sum which the referee stated was "fair and reasonable in the circumstances," for a CT Page 10674 total of $1,134,326.67. The referee recommended the Schmitz' two properties be foreclosed.
Mr. and Mrs. Schmitz did not file a motion to correct, Practice Book 438, or exceptions to the report pursuant to 439. Therefore, our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions. Practice Book 440." Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A. 994 (1985). Moreover, this court's authority in reviewing the reports of attorney trial referees is limited. As our Connecticut Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989): (i) the trial court may not "retry the case"; (ii) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or had found a fact in such doubtful language that its real meaning does not appear"; and (in) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. "It is well settled that the fact finder determines with finality the credibility of witnesses and the weight to given their testimony." Plikus v. Plikus, 26 Conn. App. 174,177, 599 A.2d 392 (1991).
Mr. and Mrs. Schmitz did file "objections" to the referee's report. In reviewing these objections, our task, according to Practice Book 440, is to determine whether the "conclusions of fact" were "properly reached on the basis of the subordinate facts found." Before commenting on each of the objections to the report, I think it is clear that Mr. and Mrs. Schmitz are attempting to substitute their own version of the facts for those found by the referee, a practice discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078 (1990). A number of their objections, for example, state that either Mr. Schmitz or Mrs. Schmitz testified in a particular way and the referee is criticized for not crediting their testimony. As was said in Beizer v. Goepfert, 28 Conn. App. 693, 706, A.2d cert. denied, 224 Conn. 901, A.2d (1992), "[t]he trial court is not bound by the uncontradicted testimony of any witness . . . The fact that some of the statements by the plaintiff's witnesses remained uncontroverted does not mean that the trier of fact was required to accept that testimony.
Regarding the specific objections to the report, the first is a claim by the Schmitzes that the referee improperly imposed CT Page 10675 the burden of proof on them on the issue of whether Hermann used some part of the money provided by Deutsche Bank for his own personal interest, rather than to promote the business interests of himself and the Schmitzes. The referee correctly pointed out, however, that this claim was the subject of a special defense, and that these defendants had the burden of proof with respect thereto, which they did not sustain. He also noted that the Limited Guaranty was very broadly written and refers to "any financial accommodations" provided to Hermann.
The Schmitzes argue that the referee overlooked the fact that the guaranty was of a limited term and that it expired in 1990. The advances of money to Hermann and the joint venture with Mr. Schmitz took place in 1984, 1985, and 1986, and this action began in 1988, all well before the expiration date of the guaranty.
Next, Mr. and Mrs. Schmitz contend that the referee improperly found that the guaranty could be called before all of the Hermanns' other assets had first been exhausted. This is based on a claim in their eighth special defense that the parties understood that the guaranty would be invoked only after such assets were first exhausted. The referee found there was a failure of proof on this claim, which is understandable in the light of the clear language of the Limited Guaranty which contains no such limitation.
These defendants allege that the referee failed to credit their claimed right of set-off for plaintiff's alleged breaches of various duties of fair dealing and good faith, its fiduciary duty to the corporation, and its CUTPA violations, all of which allegations were the subject of the counterclaim. The referee concluded that the Schmitzes had failed to prove any such breach. This objection includes a claim that Deutsche Bank had overpowering control over defendants' business, AMBICO, which constituted breaches of CUTPA and a duty of good faith and fair dealing. The referee concluded that the plaintiff bank did not control AMBICO, except to monitor the company's business in an attempt to salvage its loans, nor did the bank's conduct in bringing this foreclosure offend public policy or constitute immoral, unethical, oppressive or unscrupulous conduct. Thus the referee in effect also recommended that judgment enter in favor of Deutsche Bank on the counterclaim.
The Schmitzes further contend that life insurance on Karl CT Page 10676 Hermann, held by the bank as collateral, should have been used to offset defendants' indebtedness. The referee properly determined that the Limited Guaranty does not provide for this offset and that the Schmitzes can proceed against Hermann with respect to this insurance in connection with their claim against him for indemnity.
These defendants also argue that Deutsche Bank allowed a significant dissipation of collateral. The referee found an absence of proof on this claim, which was embodied in the fourth special defense.
Mr. and Mrs. Schmitz claim that there was no deficiency proceeding upon the sale of the Hermanns' Greenwich property which enabled Deutsche Bank to avoid an accounting for collateral which would have exposed their fraudulent practices. This property was sold, and $1,628,000 was credited against Hermann's debt of approximately $2,500,000. There was no showing by these defendants that this sale was anything other than bona fide, or that the amount credited to the debt was not proper.
They also contend that the referee allowed the plaintiff bank to perpetrate an unconscionable result because the bank allegedly committed fraud against them. I view this as a claim that the Schmitzes disagree with the referee's findings of fact. At no place in the many papers and briefs filed by these defendants do they acknowledge that they voluntarily signed this guaranty in the expectation that it would be very financially rewarding, which unfortunately for them proved not to be the case. Instead it is their position in essence that their financial problems are the bank's fault for loaning money to Hermann and their joint business venture.
The Schmitzes also argue that the referee had neither the time nor the inclination to understand what occurred between the parties, and to appreciate the equities of the case. This is apparently based on the referee's remarks that the file was very voluminous and filled with motions. He did mention that this kind of case was difficult for attorney trial referees who have busy practices. Nevertheless he conducted six full days of trial and filed a comprehensive eighteen page report including thirty-three separate findings of facts. There is no question in my mind that this attorney trial referee took his task very seriously despite its length and complexity, and rendered a thorough report. CT Page 10677
Because I believe that the referee's conclusions that Mr. and Mrs. Schmitz owe Deutsche Bank approximately $1,134,000, and that their mortgages to the plaintiff should be foreclosed, follow logically from his factual findings, which must remain undisturbed in the absence of a motion to correct and exceptions, Practice Book 439, his recommendations are accepted. No material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the "conclusions of fact" were "properly reached on the basis of the subordinate facts found."
Accordingly, judgment may enter in accordance with the trial referee's report in favor of the plaintiff Deutsche Bank to foreclose its two mortgages on the Schmitzes' Greenwich properties at 111 Brookside Drive and at 14 Grove Lane. Because the amount of debt found due the plaintiff bank, approximately $1,134,000, according to the attorney trial referee, exceeds $875,000, the fair market values of the two properties, $639,000 for Brookside Drive, and $235,600 for Grove Lane, as found by the referee, judgments of strict foreclosure hereby enter, with a law date for each mortgage of January 4, 1993, with subsequent law days for subsequent encumbrancers in the order of their priorities. A judgment file should be prepared to this effect and submitted to the clerk's office, attention assistant clerk Pulis. Judgment also enters in favor of the plaintiff on the counterclaim. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut this 30th day of November, 1992,
William B. Lewis, Judge