[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit to foreclose a mortgage given by the defendants, Peter Z. Wu and Judy Mong Wu, to secure a promissory note dated October 13, 1987, and payable to the plaintiff, Greenwich Federal Savings and Loan Association, in the original principal amount of $228,000. According to the complaint, the note bears interest at an initial rate of 9.25% and is adjustable thereafter, and provided for thirty years of monthly mortgage payments of $1,875.70. The complaint also alleges that Mr. and Mrs. Wu mortgaged their condominium unit, known as Unit B-23 at the Town Country Condominium, 20 Church street, Greenwich, to secure said note, and that they were in default in their repayment of this loan. The condominium association and two tenants who are occupying the Wu condominium, Mr. and Mrs. Shigeo Kawahara, are also defendants in this foreclosure action, but Mr. and Mrs. Wu are hereafter referred to as the defendants.
The defendants filed an answer admitting execution of the note and mortgage, but generally denying the complaint, and they CT Page 3252 added several special defenses and a counterclaim. The first special defense refers to a May, 1990 agreement between the plaintiff and the defendants, pursuant to which the defendants allegedly assigned the rent being paid by the tenants "in satisfaction of their obligation under the note and mortgage." The defendants further contend that the plaintiff agreed to pay the condominium common charges and taxes before applying the rent proceeds to its own indebtedness, and they claim that an "accord and satisfaction" had been agreed upon between the parties. The second special defense claims "unclean hands" because the plaintiff allegedly breached the May, 1990 agreement. The third claims the plaintiff breached its obligations of "good faith and fair dealing." The fourth special defense asserts a violation of the "federal Truth-in-Lending Act." The counterclaim is in three counts. The first claims breach of contract on the part of the plaintiff arising out of the May, 1990 agreement. The second count refers to the federal Truth-in-Lending Act, and the third claims a violation of General statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General statutes 52-434(a) and Practice Book 428 et seq. Hearings were held over the course of three days, and thereafter the attorney trial referee filed his report which included a number of findings of fact, among which were: (1) the mortgage proceeds were used by the defendants to purchase the condominium unit as an "investment property"; (2) after the May, 1990 rent assignment agreement had been executed, the defendants sent several checks to the plaintiff, two of which "bounced"; (3) the plaintiff, which had already credited defendants with the money represented by the two checks, then "added the face amount of the checks to the principal" of the loan; (4) the plaintiff applied the full amount of each check received from the defendants and/or the tenants to its loan, and did not use any of these funds to pay common charges or taxes; (5) the defendants were in default in payment of the mortgage note; (6) the fair market value of the condominium unit was $225,000; and (7) the total debt as of December 1, 1992, was approximately $286,000, including interest, late charges, and delinquent taxes, and that a reasonable attorney's fee was $13,907.25.
The attorney trial referee drew the following conclusions from these facts: (1) since the defendants were in default in repayment of the loan, a judgment of strict foreclosure should CT Page 3253 enter in favor of the plaintiff because the debt "substantially exceeds" the value of the mortgaged premises; (2) the defendants had failed to prove that the plaintiff had agreed to first pay common charges and taxes before applying the rent payments to its loan, because the agreement itself contained no such provision; (3) the plaintiff was not authorized by the terms of the note and mortgage to add to the principal of the debt the amount of the two "bounced checks," but that the defendants had failed to prove that the plaintiff's conduct in this regard was "inequitable or oppressive," nor did they prove that plaintiff breached obligations of good faith and fair dealing, or stood in any kind of a fiduciary relationship with the defendants; (4) the defendants had failed to prove an accord and satisfaction because, among other reasons, they themselves had failed to comply with the rent assignment agreement; and (5) the defendants had failed to prove their special defense and counterclaim that the plaintiff had violated CUTPA, as its conduct was not deemed by the referee to be unfair or oppressive.
In accordance with Practice Book 438, the defendants moved to correct the attorney trial referee's report. They claimed that the findings of fact should be amended in a number of ways, including that: (1) the failure of the plaintiff to use the rent payments and the mortgage note payments to pay common charges and taxes violated the agreement between the parties; (2) defendants had the right pursuant to that agreement to send a portion of each mortgage payment to the condominium association to pay common charges, parking fees and taxes, and then remit the balance to the plaintiff; and (3) plaintiff's conduct in adding the face amount of the two "bounced" checks to the principal of the mortgage note violated the federal Truth-in-Lending law, CUTPA, and its fiduciary relationship with the defendants.
In response to the motion to correct, the referee did not change his ultimate conclusions that the defendants' mortgage should be foreclosed, and that the defendants had failed to prove their various special defenses and counterclaim. He did, however, make the following comments in a supplementary report: (1) the defendants had failed to prove that the plaintiff not only added the amount of the "bounced" checks to the principal of the loan, but also reversed the entries giving credit for such amounts, thus allegedly taking duplicate corrective actions; (2) the written assignment agreement between the parties that defendants claim was breached does not obligate the plaintiff to give priority to the payment of common charges, parking fees and CT Page 3254 taxes, and there had been no meeting of the minds on this subject, as alleged by the defendants; (3) at the time the plaintiff gave notice of its intent to commence a foreclosure, not only had the current payments fallen behind, but a "substantial" arrearage was in existence; and (4) the plaintiff had not imposed a "finance charge" on the defendants for the "bounced" checks, but rather was seeking to correct its record and reflect the actual amount owed by the defendants, although it did not utilize a proper methodology, in the referee's opinion.
Although the defendants did file objections to the acceptance of the report, Practice Book 440, they did not file exceptions to the report asking this court to correct the report, nor did they file a transcript of the trial. Practice Book 439. It follows therefore that the factual findings by the referee must stand uncorrected. Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A.2d 994 (1985) (our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions"). Failing to file exceptions constitutes in effect a "waiver" of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989). The usual review of an attorney's report by this court consists of two tasks, according to Thermoglaze. Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied217 Conn. 811, 587 A.2d 153 (1991). The first is to determine whether "there was ample evidence to support the attorney trial referee's factual findings," and the second is to rule on whether "the conclusions reached were in accordance with applicable law." In this case, however, only the latter review is necessary in the absence of a challenge to the findings of fact.
Moreover, this court's authority in reviewing an attorney trial referee's recommendations is a limited one in any event. As our supreme court held in Dills v. Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
If the findings of fact by the referee are accepted, as the CT Page 3255 must be in this case in the absence of any exceptions to the report, then this court's task, according to Bernard v. Gershman, supra, 656, is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id.
Moreover, reviewing the motion to correct, one senses that the defendants are attempting to substitute their own version of the facts for those found by the referee, a practice discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078 (1990). A number of their objections to the findings of fact claim that there was testimony at the trial which was contrary to that credited by the referee. However, as was said in Beizer v. Goepfert, 28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), "[t]he trial court is not bound by the uncontradicted testimony of any witness . . . The fact that some of the statements by the plaintiff's witnesses remained uncontroverted does not mean that the trier of fact was required to accept that testimony." To phrase it slightly differently, "[i]t is well settled that the fact finder determines with finality the credibility of witnesses and the weight to be given their testimony." Plikus v. Plikus, 26 Conn. App. 174,177, 599 A.2d 392 (1991).
The objections to the acceptance of the referee's report that were filed in accordance with Practice Book 440 contend essentially that the referee "erred in his findings" in a number of ways. As pointed out, this is an attack on the referee's findings of fact, which need not be considered in the absence of exceptions. With respect to the referee's conclusions, the only one, in this courts; opinion, that merits comment is the claim by the defendants that the plaintiff's conduct in adding to the principal of the debt the amount of the two "bounced" checks should result in a recision of the underlying debt, in accordance with Cheshire Mortgage Services. Inc. v. Montes, 223 Conn. 80,612 A.2d 1130 (1992).
That case concerned what the Supreme court described as a "finance charge," a fee charged to the borrowers for a future recording of a proposed assignment of the second mortgage. The charge fit into the definition of a finance charge as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed CT Page 3256 directly or indirectly by the creditor as an incident to or a condition of the extension of credit." Id., 97. The court determined that the fee in question was a finance charge which, because it was undisclosed, caused a violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. This conduct in turn was held to also constitute a CUTPA violation. agree with the referee's conclusion that the act of the plaintiff in adding to the principal mortgage debt the amount of defendants' "bounced checks" did not involve a "finance charge." At worst, it was an unauthorized act by the plaintiff in attempting to recoup its loss occasioned by the defendants' own conduct in transmitting checks that did not clear. It is not "a charge payable directly by the consumer and imposed directly by the creditor as an incident to the extension of credit." Id., 98.
The other main objection to the referee's report by the defendants pertains to the interpretation of the rent assignment agreement between the parties. The referee made a finding of fact that the parties did not have a meeting of the minds that, the agreement should be interpreted as advocated by the defendants, viz., that any monies paid by the defendants should first be applied to common charges, parking fees, and taxes. The referee made a factual determination that the agreement did not so provide, and that the defendants had failed to prove otherwise, a finding that must remain undisturbed.
In summary, no material error in the referee's report has been found, or any other sufficient reason why it its unacceptable. Practice Book 443. In the words of Practice Book 440, the conclusions of fact "were properly reached on the basis of the subordinate facts found."
Judgment of strict foreclosure is entered in favor of the plaintiff in accordance with the recommendation of the attorney trial referee. Law day for the defendants, as owners of the equity of redemption, is set for April 28, 1993. Fair market value of the unit is found to be $225,000. The debt is $308,270.11, as of this date, which includes an attorney's fee of $13,907.25, as calculated by the referee. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 6th day of April, CT Page 3257
William B. Lewis, Judge.