[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a claim by the plaintiff, Rent-A-Tool 
Equipment Corp., for money allegedly owed by the defendant, James Perna, for the lease of construction equipment. The plaintiff filed an amended three count complaint, dated March 11, 1994, and alleges in the first count that on October 14, 1992, the defendant, doing business as J G Excavating, rented a backhoe excavator, and failed to pay rental charges for said piece of equipment. In the second count, the plaintiff alleges that on CT Page 5991 October 1, 1992, the defendant rented a loader and failed to pay the rent charge. In the third count of the complaint, the plaintiff contends that on August 28, 1992, the defendant rented an excavator, and on November 1, 1992, rented a dozer, and failed to pay the rent for either piece of equipment. In addition to the unpaid rent in the approximate amount of $20,300, the plaintiff also sought interest and reasonable attorney's fees pursuant to a written rental agreement.
The defendant filed an answer denying the material allegations of the complaint and a special defense claiming that the rental payments due the plaintiff for renting a loader as specified in the second count of the complaint had been fully paid by J G Excavating, Inc.
This case was referred to Attorney Lewis G. Schwartz, an attorney trial referee, in accordance with General Statutes §52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following pertinent findings of fact: (1) that the named defendant, James Perna, had been in business for many years as an excavator and worked under the format of a small closely-held corporation, J. 
G., Inc.; (2) that for twenty years J. G., Inc. had rented excavating equipment from H.O. Penn Machinery Co., Inc. (H.O. Penn), but in 1992 a dispute arose and H.O. Penn declined to rent equipment thereafter to J. G., Inc.; (3) that H.O. Penn's salesman, David Siddell, advised Perna that although H.O. Penn would no longer rent equipment to his company, it would furnish such equipment to the plaintiff, who would thereafter rent such equipment directly to the defendant or, as Perna contends, to his company; (4) that the equipment was rented from the plaintiff and $20,455 is owed to the plaintiff, but the issue is whether the named defendant, James Perna, personally owes this amount to the plaintiff, or whether it is a debt of the corporation; (5) that Siddell testified that the plaintiff wanted to deal only with James Perna personally and not with his company; (6) that James Perna promised Siddell that invoices from the plaintiff would be paid promptly and that he would see that they were paid, although Siddell agreed that there was no specific discussion regarding whether Perna personally or his corporation would be liable for the rental payments to the plaintiff; (7) that Siddell arranged for the rental of the excavating equipment from the plaintiff and collected the rent due the plaintiff; (8) that the plaintiff did not follow its usual practice and procedure of obtaining a written personal guarantee from an individual of a corporate CT Page 5992 debt; (9) that all monthly bills were directed by the plaintiff to "J. G. Excavating," and that all deliveries of the equipment were made to the corporation; (10) that all rental payments made to the plaintiff were made by corporate checks of J. G. Excavating Co., Inc.;[1] (11) that the plaintiff's witness acknowledged that by May 1992 it was aware that Perna was doing business in the name of J. G. Excavating, a corporation; and (12) that for many years Perna's corporation was called J. G., Inc., but after his father left employment with that company, Perna created a new company, J. G. Excavating Co., Inc., of which he is the sole stockholder.
The attorney trial referee concluded on the basis of the above findings of fact that: (1) there was no oral or written agreement between the plaintiff and the defendant that the latter would be personally liable for the corporation's debt; (2) the defendant's commitment to pay promptly all bills from the plaintiff did not mean that he personally guaranteed such payment; (3) Siddell was not an agent of Perna because Siddell only "introduced" Perna to the plaintiff and did not act as an agent of Perna with the latter's agreement; (4) the defendant Perna is not individually liable for the plaintiff's invoices because the evidence did not show that Perna agreed that he would be personally responsible for such payments; (5) the plaintiff did not plead or prove that the "corporate veil" of J. G., Inc., or of J. G. Excavating Co., Inc., should be "pierced" in order to hold the defendant personally liable; (6) plaintiff's reliance on Diamond Match Co. v. Crute, 145 Conn. 277,141 A.2d 247 (1958), is misplaced because in that case the account itself, the invoices, the deliveries and monthly statements were all directed to the defendant in that case as an individual, not to the corporation of which he was president and treasurer; and (7) since the entire course of dealing with the rental equipment was between the plaintiff and the defendant "in a corporate capacity," the money due the plaintiff was owed by the corporation, but not by the named defendant personally, and accordingly judgment should enter in favor of the named defendant.
The plaintiff moved to correct the referee's report pursuant to Practice Book § 438. The plaintiff sought corrections, among others, to reflect that: (1) the defendant, James Perna, agreed to personally pay the rent charges due the plaintiff; (2) the plaintiff only agreed to re-rent H. O. Penn's equipment on the basis that James Perna would be individually liable for the CT Page 5993 payment of rent; (3) the defendant never notified the plaintiff that he was operating under the name of J. G. Excavating, Inc. or that a corporation was renting the equipment; and (4) the corporate checks used to pay the plaintiff did not indicate that the defendant was signing them in a corporate capacity.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any substantive changes in his report or recommendation that judgment enter for the defendant. The referee noted that although the defendant never sent a "specific verbal notification" to the plaintiff that he was acting as a corporation, the rental payments by a corporate check sufficed to give notice to the plaintiff that it was dealing with a corporation and not an individual. The referee also disagreed with the contention that Siddell was an agent of the defendant or that Siddell advised the defendant that the plaintiff would re-rent equipment only to him as an individual, and not to a corporation.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated very recently in Elgar v. Elgar, 238 Conn. 839,848-49, ___ A.2d ___ (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoRomano v. Derby, 42 Conn. App. 624, 626, ___ A.2d ___ (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, CT Page 5994 in addition, whether "[t]he conclusions drawn therefrom were legally and logically correct." As stated in Romano v. Derby,
supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that the plaintiff did not file any exceptions to the referee's report pursuant to Practice Book § 439. It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file exceptions constitutes in effect a waiver of the right to attack the subordinate factual findings contained in the report.". . . [F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital. Inc., 7 Conn. App. 364, 366,508 A.2d 829 (1986). A failure to file valid exceptions constitutes in effect a waiver of the "right to attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report. Beizer v. Goepfert, 28 Conn. App. 693, 706-07,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
The plaintiff did file objections to the acceptance of the referee's report in accordance with Practice Book § 440.[2] The objections relate to the determination by the referee that: (1) Siddell was not the agent of the defendant; (2) that the plaintiff did not deal with the defendant in an individual capacity; (3) that payment by corporate check put the plaintiff on notice that it was dealing with a corporation; and (4) the checks indicated that the named defendant was signing them in a corporate capacity. CT Page 5995
"The existence of agency is a question of fact to be determined by the trier of fact." Gateway v. DiNoia, 232 Conn. 223,239-40, 654 A.2d 342 (1995). As previously stated, the plaintiff did not file exceptions to the referee's findings of fact, and therefore the referee's determination regarding whether Siddell was an agent of the defendant cannot be disturbed. Furthermore, the findings of fact lead logically to the conclusion that the plaintiff did not deal with the defendant in his individual capacity.
The assertion by the plaintiff that Diamond Match Co. v.Crute, supra, 145 Conn. 279, is controlling because it holds that the receipt of a corporate check does not give notice to a vendor that it is dealing with a corporation, is incorrect. The case is readily distinguishable because the court in that case pointed out that "the defendant made no attempt to have the plaintiff charge or bill the corporation instead of himself." In the present case, the referee found as facts that all monthly statements were directed to the corporation, not to the named defendant personally. Moreover, the exhibits reveal that the corporate checks were signed by James Perna with the notation "auth. sig." which would appear to indicate that the checks were signed in a representative capacity.
In any event, the referee's findings of fact must stand unchallenged because of the absence of exceptions, and his conclusion that the named defendant, James Perna, should not be personally liable to the plaintiff follows legally and logically from those facts.
Therefore, as to the plaintiff's complaint, judgment is entered in accordance with the recommendation of the referee in favor of the defendant, James Perna. Statutory costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 27th day of August, 1996.
William B. Lewis, Judge