[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between the plaintiff, John Rainbow, and his former employer, Frederick A. Moran, Moran Asset Management, Inc. and Moran Associates, hereinafter referred to as the defendants. The issue is whether the plaintiff quit his employment voluntarily or was fired. The attorney trial referee to whom the case was referred concluded that the plaintiff left of his own free will to take another job, and hence, that the defendants did not owe him any money. This court concurs with the referee's recommendation. CT Page 12479
The plaintiff filed an amended complaint containing three counts. In the first count, the plaintiff alleges that on or about May 21, 1996, he entered into a written employment agreement with the defendants for a period of two years at an annual salary of $45,000. The plaintiff further alleges that approximately four months later, the defendants terminated his employment, and have refused to pay him in accordance with the agreement. In the second count, the plaintiff claims that the defendants were unjustly enriched. In the third count of the complaint, the plaintiff contends that the defendants committed fraud by promising him a guaranteed salary for two years and then refusing to pay him.
In their amended answer, the defendants agree that they had a written employment agreement with the plaintiff and that the plaintiff worked for them until September 13, 1996, but they deny the material allegations of the complaint. The defendants also asserted four special defenses. In the first special defense, the defendants claim that the plaintiff voluntarily left their employ and is not entitled to a recovery pursuant to the employment agreement. In the second and third special defenses, the defendants contend that the plaintiff is barred by the doctrines of estoppel and waiver, respectively, from any recovery. In their fourth special defense, the defendants claim that the plaintiff has failed to mitigate his damages by not seeking other employment.
The case was referred to Attorney Gordon R. Paterson, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book (1998 Rev.) § 19-2 The referee submitted a report finding the following facts: (1) the defendants are in the brokerage business and manage money for investors; (2) the plaintiff first began to work for the defendants in 1988; (3) in 1996, the plaintiff was offered another job and so advised the defendants, who, in order to induce the plaintiff to remain employed with them, entered into a written agreement dated May 21, 1996, guaranteeing the plaintiff a salary of $45,000 a year for two years; (4) the individual defendant personally guaranteed payment of this salary; (5) the plaintiff agreed to "remain with the company during the two year term of this agreement unless: (a) I move out of the area, (b) family or medical circumstances require me to leave, or (c) some other unexpected circumstances arise which make it unreasonable for me to remain with the company; (6) defendants' business CT Page 12480 fortunes deteriorated in the summer of 1996, but the defendants' principal, Frederick A. Moran, told the plaintiff that even if the business continued to get worse, the two of them could continue the business working out of Moran's home; (7) the plaintiff interviewed for a job with another money management firm and accepted new employment effective September 13, 1996; and (8) about three and a half months later, the plaintiff was terminated from his new job and thereafter sought payment from the defendants based on the employment agreement, which payment the defendants refused to make, thereby precipitating this lawsuit.
The attorney trial referee concluded, on the basis of the above findings of fact, that judgment should enter for the defendants because the plaintiff left his job voluntarily, and "when he did, he breached the implied terms of the contract that he would work for Moran to earn the agreed salary."
Pursuant to Practice Book (1998 Rev.) § 19-12, the plaintiff moved to correct the referee's report.[1] The plaintiff asked the referee to add the statements that: (1) the defendants filed a report or form with the National Association of Securities Dealers indicating that the plaintiff left his employment because of "business closing" and did not check "voluntary departure" on the form; and (2) the plaintiff was involuntarily forced out of his employment because the defendants shut down the business, and that he is entitled to be paid over the course of the two year employment agreement.
The attorney trial referee declined to make any changes in his report or recommendations in response to the plaintiff's motion to correct.
The plaintiff did not thereafter file exceptions to the report as authorized by Practice Book (1998 Rev.) § 19-13.[2] In addition, the plaintiff did not file objections to the report as authorized by Practice Book (1998 Rev.) § 19-14.[3] The plaintiff did file "objections" to the refusal of the attorney trial referee to make the corrections requested in the plaintiff's motion to correct, but not objections as set forth in § 19-14.
This court's scope of review of an attorney trial referees report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 848-49, 679 A.2d 937 (1996). There, the court held CT Page 12481 that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See alsoTDS Painting and Restoration, Inc. v. Copper Beach Farm, Inc.,45 Conn. App. 743, 751, 669 A.2d 173, cert. denied, 243 Conn. 908,701 A.2d 338 (1997) (the court cannot find additional facts or reject others unless a material fact has been found without evidence.").
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845, this court generally has two tasks to perform in reviewing an attorney trial referees report. The first task is to determine whether the "referees findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated inRomano v. Derby, 42 Conn. App. 624, 628, 681 A.2d 387 (1996), "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referees findings and therefore concluded that judgment should be rendered for the defendant."
In this particular case, however, as was said in Tarka v.Filipovic, 45 Conn. App. 46, 54, 694 A.2d 824 (1997), the "failure to comply with the rules of practice governing procedures by which a party may challenge the findings of fact and factual conclusions of the attorney referee proves fatal to his claim."
Whether the plaintiff quit or was fired is a factual determination that should not be disturbed by this court. In his motion to correct, it appears that the plaintiff is attempting to substitute his own version of the facts concerning this issue. If the plaintiff's position were to be accepted, the court in effect CT Page 12482 would be retrying the case and reexamining the credibility of the witnesses. This is not permitted. Argentinis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991).
Although not necessary to the resolution of this case, the transcript has been examined to insure that there is a factual basis for the referee's findings of fact regarding the circumstances under which the plaintiff's employment ended. The transcript contains evidence that the plaintiff left for a better job.[4]
The transcript certainly contains testimony that is contrary to the referees findings regarding the plaintiff's departure from the employ of the defendants. It is obvious, however, that the referee chose to believe testimony presented by the defendants. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court." Nor'easterGroup, Inc. v. Colossale Concrete, Inc. 207 Conn. 468, 473,542 A.2d 692 (1988).
Additionally, "[g]reat deference is given to the trial courts findings because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v.Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). A reviewing court should not retry the facts or assess the credibility of the witnesses. The "finder of fact is in a better position to determine the credibility of the witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra, 28 Conn. App. 706. In addition, findings of fact in a contract action should be overturned "only when they are clearly erroneous." WilcoxTrucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425,567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318
(1990). The recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id. Thus, the facts found by the referee are accepted because they find support in the record. CT Page 12483
Based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. 848-49, the referees report and recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book (1998 Rev.) § 19-17(a). Judgment therefore enters in favor of the defendants.
Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of November, 1998.
William B. Lewis, Judge