STATE BANK OF WESTCHESTER *v.* NEW DIMENSION HOMES OF CONNECTICUT, INC., ET AL.
(13967)

DUPONT, C. J., and FOTI and HEIMAN, Js.

Argued April 27—decision released July 18, 1995

492

*Neil R. Marcus,* with whom was *Daniel F. Wolf,* for the appellants (defendants).

*Paul E. Burns,* with whom, on the brief, was *William Nathaniel Carroll,* for the appellee (plaintiff).

HEIMAN, J. In this foreclosure action, the defendants[1] appeal from the judgment of the trial court in favor of the plaintiff. On appeal, the defendants claim that the trial court improperly (1) determined that an attorney trial referee was authorized to rule on the defendants' contested motion to amend their answer, (2) found that the attorney trial referee correctly denied that motion to amend, and (3) rendered judgment in accordance with the recommendations of the attorney trial referee. We agree with the defendants that the trial court incorrectly determined that an attorney trial referee has the authority to rule on a motion to amend and reverse the judgment of the trial court.

The following facts are relevant to this appeal. In early 1988, the defendant N. David Hanania began negotiations regarding the purchase of five lots in Wilton with the intention of developing those lots residentially. The defendant corporation, New Dimension Homes of Connecticut, Inc., was created for the purpose of acquiring and developing this property. At about this time, John Fitzgerald, chairman of the board and chief executive officer of the plaintiff, expressed

---

[1] The defendants in this appeal are New Dimension Homes of Connecticut, Inc., and four individuals associated with that corporation: N. David Hanania, Raymonde Mujak, Earle S. Rynston, and George Stanley.

an interest on behalf of the plaintiff in providing financing for the project. The discussions between Hanania and Fitzgerald regarding financing were not memorialized in writing.

On July 26, 1988, the plaintiff agreed to loan the defendant New Dimension Homes of Connecticut, Inc., the principal amount of $2,025,000 to be secured by a mortgage on the five lots of property purchased. The loan was further secured by the personal guarantees of the defendants Hanania, Raymonde Mujak, Earle S. Rynston and George Stanley. The terms of the loan provided for the principal to be repaid one year from the making of the loan and for quarterly payments of interest. Fitzgerald was the loan officer responsible for the loan.

Upon the defendants' failure to make the required payment of interest on July 26, 1989, the plaintiff decided to exercise its option to declare the entire balance on the loan due and payable. On September 26, 1989, the plaintiff instituted suit against the defendants, seeking to foreclose on the mortgaged property. In their answer, the defendants admitted having executed the note, mortgage and guarantees. The defendants asserted, however, by way of special defense, that they were fraudulently induced into acquiring the Wilton property by the plaintiff's promises to make available sufficient additional funds to complete the construction on that property. The defendants claimed that this failure to advance additional sums forced them to default on the loan.

On October 1, 1991, the defendants moved for the appointment of a commission to take the deposition of Fitzgerald, who was no longer in the plaintiff's employ and resided in New York. This motion was granted on October 21, 1991. On December 11, 1991, still attempting to depose Fitzgerald, the defendants moved to com-

pel Fitzgerald's deposition or in the alternative to preclude the plaintiff from introducing his testimony at trial. This subsequent motion was denied.

On January 21, 1992, the parties consented to reference of the case to attorney trial referee David Albert.[2] At that time, the defendants informed the attorney trial referee that they wanted to postpone the trial until they could take the deposition of Fitzgerald who was present in the courtroom. The defendants stated that the plaintiff had responded to their notice of deposition by informing them that it could not produce Fitzgerald because he was no longer an employee of the plaintiff. The defendants also informed the court that they had instituted a separate action in New York for the sole purpose of taking Fitzgerald's deposition. The attorney trial referee decided to allow the plaintiff to call its first witness to establish the amount of the debt, but continued further hearings until the defendants were able to take Fitzgerald's deposition.

On February 20, 1992, the defendants deposed Fitzgerald. Allegedly as a result of the information obtained in the deposition, the defendants moved the court for permission to amend their answer to add a special defense and to file two counterclaims. The proposed amendments included a second special defense that the interest rates on the loan were usurious and two counterclaims, one alleging fraud[3] and the other, a vio-

[2] The transcript from January 21, 1992, reveals that the plaintiff readily consented to the reference and that the defendants expressed some concern that the case was too complicated to be heard by an attorney trial referee. The defendants ultimately consented to the reference.

[3] In the defendants' first proposed counterclaim, the defendants alleged that they had approached the plaintiff concerning the possibility of the plaintiff's financing the purchase of a "minimum of one and a maximum of two" lots in Wilton. The defendants further alleged that the plaintiff encouraged them to form the defendant corporation and to proceed with the acquisition of the Wilton lots with false promises to extend the necessary financing. The defendants alleged that they relied on these promises to their

lation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110 et seq.[4] The plaintiff objected to the motion to amend and requested oral argument. Oral argument was heard before the attorney trial referee[5] who granted the motion as to the additional special defense of usury and denied the motion as to the proposed counterclaims. Trial continued thereafter on June 2, 1992, and was completed on September 2, 1992.

On March 18, 1993, the attorney trial referee issued a report containing his findings of fact and recommended judgment for the plaintiff.[6] The defendants filed exceptions to the attorney trial referee's report and objected to its acceptance. Among its objections, the defendants claimed that the attorney trial referee lacked the authority to rule on their contested motion to amend their answer. On August 6, 1993, the trial court overruled their objections and entered judgment in accordance with the attorney trial referee's report. This appeal followed the entry of strict foreclosure and setting of law days on August 5, 1994.

---

detriment and that the plaintiff knew that the promises were false because such an extension of funds would have exceeded its legal lending limitations as well as the limits of the loan policy as set by the plaintiff's board of directors.

[4] In their second proposed counterclaim, the defendants asserted that the facts alleged in their first counterclaim constituted an unfair trade practice.

[5] Although the arguments before the attorney trial referee were conducted off the record, the parties agree that the attorney trial referee asked the judge who had assigned the case whether he should decide the motion. The trial court informed the attorney trial referee that he had the case for all purposes and was to hear the parties and then rule on the motion.

[6] The attorney trial referee first issued his report on January 6, 1993. Both parties filed motions to correct these findings pursuant to Practice Book § 438. After considering these motions, the attorney trial referee filed the March 18, 1993 report in substitution of the original report. The attorney trial referee's decisions whether to correct various findings is not at issue in this appeal.

## I

The defendants first claim that the attorney trial referee did not have the authority to rule on their motion to amend their answer to the plaintiff's complaint. We agree and reverse the decision of the trial court.

The limited authority of attorney trial referees was first defined by our Supreme Court in *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 508 A.2d 415 (1986). Attorney trial referees, whose authority stems from General Statutes § 52-434 (a) (4),[7] are not judges and

[7] General Statutes § 52-434 provides in relevant part: "STATE REFEREES. (a) APPOINTMENT OF RETIRED JUDGES AND MEMBERS OF THE BAR. CASES REFERRED. (1) Each judge of the supreme court, each judge of the appellate court, each judge of the superior court and each judge of the court of common pleas who ceases or has ceased to hold office because of retirement other than under the provisions of section 51-49 and who is an elector and a resident of this state shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member. The superior court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in the case. The superior court may, with the written consent of the parties or their attorneys, refer any criminal case to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment, sentencing and appeal in the case. (2) Each judge of the circuit court who has ceased to hold office because of retirement other than under the provisions of section 51-49 and who is an elector and a resident of this state shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member, to whom the superior court may, with the written consent of the parties or their attorneys, refer any case pending in court in which the issues have been closed and which the judges of the superior court may establish by rule to be the kind of case which may be heard by such referees. The referee shall hear any such case so referred and report the facts to the court by which the case was referred. (3) Each judge of the juvenile court who ceases or has ceased to hold office because of retirement other than under

do not have the authority of a judge. *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 501–502. Rather, attorney trial referees have limited roles as fact finders "whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. Practice Book §§ 428 through 445." Id., 502; see also *Rostenberg-Doern Co.* v. *Weiner*, 17 Conn. App. 294, 299, 552 A.2d 827 (1989). Any legal conclusions reached by an attorney trial referee have no conclusive effect. *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 510. "The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment."[8] Id.; see also *CMG Realty of Connecticut* v. *Colonnade*

the provisions of section 51-49 and who is an elector and a resident of this state shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which ʰe is a member, to whom a judge before whom any juvenile matter is pending may, with the written consent of the child concerned, either of his parents or his guardian or his attorney, refer any juvenile matter pending. The referee shall hear any matter so referred and report the facts to the court for the district from which the matter was referred. (4) In addition to the state referees who are appointed pursuant to subdivision (1), (2) or (3) of this section, the chief justice may appoint, from qualified members of the bar of the state, who are electors and residents of this state, as many state referees as he may from time to time deem advisable or necessary. No appointment of a member of the bar may be for a term of more than one year. Notwithstanding the provisions of subsection (f) of this section, state referees appointed by the chief justice from members of the bar shall receive such reasonable compensation and expenses as may be determined by the chief justice. . . ."

[8] Our Supreme Court in *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 500–509, found that these limitations on the powers of an attorney trial referee are compelled by reason of the constitution of Connecticut, article fifth, § 2, which requires judges to be nominated by the governor and appointed by the General Assembly, as well as the legislative history surrounding General Statutes § 52-434 (a) (4) establishing attorney trial referees.

*One at Old Greenwich Ltd. Partnership,* 36 Conn. App. 653, 664, 653 A.2d 207 (1995); *Rostenberg-Doern Co.* v. *Weiner,* supra, 300.

"The rules of practice governing procedure in matters referred to committees are also applicable to '[attorney trial] referees.' Practice Book § 428." *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 199 Conn. 502–503; see also *Rostenberg-Doern Co.* v. *Weiner,* supra, 17 Conn. App. 300 n.8. As such, Practice Book § 433 requires that a case be referred to a committee or attorney trial referee only after the issues have been closed and the case has been claimed to the trial list. After such time, no further pleadings may be filed "except by agreement of all parties or *order of the court.*" (Emphasis added.) Practice Book § 433; compare Practice Book § 438 (motion to correct to be filed with court and then forwarded to attorney trial referee for consideration of motion). The attorney trial referee cannot, therefore, make a legal determination regarding the merits of a contested motion to amend pleadings, nor can the trial court legally delegate its authority to the attorney trial referee; it is an integral part of the authority of the court to make such rulings. See Practice Book § 433; *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 501–502.

The trial court, therefore, improperly determined that the attorney trial referee was authorized to rule on the defendants' contested motion to amend. The attorney trial referee's limited role does not extend to legal rulings regarding the pleadings of the parties; see Practice Book § 433; and the trial court improperly found otherwise. The trial court should, therefore, have rejected the report of the attorney trial referee and ordered further proceedings pursuant to Practice Book § 443.[9]

_____
[9] Practice Book § 443 provides in pertinent part: "The court shall render such judgment as the law requires upon the facts in the report as it

## II

Because we determine that an attorney trial referee has no authority to rule on a contested motion to amend we need not address the defendants' second claim that, if an attorney trial referee did have such authority, the trial court improperly determined that the attorney trial referee correctly denied that motion.

In addition, in light of our remand to the trial court for further proceedings pursuant to Practice Book § 443, we do not address the defendants' third claim that the trial court improperly rendered judgment in accordance with the recommendation of the attorney trial referee.

The judgment is reversed and the case is remanded to the trial court with direction to reject the report of the attorney trial referee and to order further proceedings pursuant to Practice Book § 443.

In this opinion the other judges concurred.

may be corrected. If the court finds that the [attorney trial referee] has materially erred in his rulings or that by reason of material corrections in his findings the basis of the report is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another committee for a new trial or revoke the reference and leave the case to be disposed of in court."