[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a contract between the plaintiff, Windham Properties, Inc. (Windham), as purchaser of approximately four acres of property in Windham, Connecticut, and the defendants, Kathleen A. Joy and Blaine C. Cromie, d/b/a KAJ Associates (KAJ), as sellers. The plaintiff alleges in its complaint that the purchase agreement with the defendants, dated April 13, 1987, CT Page 3607 obliged the defendants to construct a retention pond in order to drain the subject premises, but that the defendants failed and refused to do so.[1] The plaintiff further alleges that thereafter it constructed said retention pond at its own expense for $28,000, and that the defendants have refused to reimburse the plaintiff for that amount.
The defendants filed an answer denying the material allegations of the complaint, and four special defenses. The first special defense contends that although the contract of sale to Windham called for a closing date of May 15, 1987, the plaintiff refused to purchase the premises until two months thereafter, thus abrogating any obligation on the part of the defendants to construct said pond. The second special defense claims that the parties verbally agreed that if the plaintiff sold the subject parcel, the defendants' obligation to construct said pond would terminate. In the third special defense, the defendants allege that the plaintiff changed the construction plans for the pond to increase its size and cost, thereby releasing the defendants from any obligation to construct said pool. In the fourth special defense, the defendants contend that the cost supposedly incurred by the plaintiff greatly exceeded the reasonable and proper cost of constructing the pond in accordance with the plans that the plaintiff and the defendants had originally agreed upon.
This case was referred to Attorney Samuel V. Schoonmaker, III, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following findings of fact: (1) that other pertinent provisions of the April 13, 1987 contract between Windham and KAJ, the plaintiff and defendant herein, were: (a) paragraph 2 providing that the conveyance to the plaintiff would be subject to a reservation of an easement and, right of way as described in an attachment; (b) paragraph 4 scheduling the closing for May 15, 1987, although it actually took place on July 14, 1987; (c) paragraph 3 providing that the purchase price of $135,000 included a $110,000 purchase money mortgage to the sellers; (d) paragraph 5 in which KAJ agreed that the right of way reserved to it may be transferred to another location if the town of Windham agreed; and (e) paragraph 6 providing that Windham would convey to KAJ an easement to enable KAJ to construct and maintain a pond "over an area westerly of the piece being conveyed," the exact area of which was to be "determined by Towne Engineering;" (2) CT Page 3608 that prior to the closing with the plaintiff, the defendant KAJ entered into agreements with one Arnold Peck first on May 5, 1987, and on July 6, 1987, for the sale of a parcel abutting the parcel to be sold to the plaintiff, which agreements obligated Peck to build the retention pond thereon, which pond was to be used both by Peck and also by the plaintiff on the abutting property, and that the provision was to "survive" the sale by KAJ to Peck;[2] (3) that in July 1987, Windham entered into an agreement with Rumar Associates (Rumar), a general partnership, to sell approximately seventy acres in Windham, including the subject premises about to be purchased from KAJ; (4) that paragraph 21 of the agreement provided that, unless otherwise specifically stated, nothing in the agreement with Rumar would survive the delivery of the deed, and that the plaintiff's deed of July 22, 1988 to Rumar did not reference KAJ's obligation to build a pond;[3] (5) that at the closing with KAJ on July 14, 1987, the purchase money mortgage executed by the plaintiff as purchaser explicitly referred to KAJ's obligation in paragraph 8 of the purchase agreement to build the pond, which provision, according to the referee, was "intended to survive the closing"; (6) that Windham sold the subject parcel to Rumar on July 22, 1988, at which point the pond had not yet been constructed, (7) that Windham's deed to Rumar did not refer to KAJ being obligated to build a retention pond; (8) that on that same date, Windham paid to KAJ the full amount of its purchase money mortgage held by KAJ as mortgagee, although neither KAJ nor anyone else had built or even started building a pond; (9) that an escrow agreement was signed at the closing of the sale by Windham to Rumar that referred to "the obligation of Arnold Peck to construct a detention basin and drainage structures" which obligation was said to be based on "a contractual obligation with the former owner of the land where the retention basin is to be constructed;" (10) that when the escrow agreement was executed at the Rumar closing, Windham deposited $30,000 in escrow to indemnify Rumar in the event that the pond was not built "by Arnold Peck or any other person;" (11) that Windham made a number of requests to both Peck and KAJ to build the pond,[4] but KAJ took the position that it was no longer obliged to build the pond after Windham's sale to Rumar and its sale to Peck; and (12) that Windham itself finally built the pond for $28,000 by hiring Nazarko Realty Group, owned by two brothers who were both directors and officers of Windham, which pond was approved by the town of Windham on or about November 7, 1989.
The attorney trial referee concluded on the basis of the CT Page 3609 above findings of fact that: (1) the obligation of KAJ to build the pond survived the closing and delivery of deed to Windham on July 14, 1987, because it was agreed to in the contract of sale, and referenced in the purchase money mortgage to KAJ; (2) the plaintiff released KAJ from its obligation to build the pond upon the plaintiff's conveyance to Rumar. The referee's conclusion was succinctly summarized in this sentence: "Windham's conduct manifested its assent to the substitution of Peck as the obligor to build the pond." In reaching this conclusion, the referee pointed to the following: (a) Windham failed to reference KAJ's obligation regarding the pond in its deed to Rumar, despite the provision in its contract with Rumar that nothing would survive the delivery of the deed, unless specifically so stated; (b) Windham paid off its purchase money mortgage in full at the Rumar closing even though the pond had not been built and that its agreement with KAJ provided that if the pond was not built after a certain time, the plaintiff could do so itself, which was done, and subtract the cost thereof from its obligation to KAJ, which was not done; and (c) in the escrow agreement with Rumar, the plaintiff specifically referred to Arnold Peck being obliged to construct the pond. The referee recommended that judgment enter in favor of the defendants.
The plaintiff moved to correct the report pursuant to Practice Book § 438. It sought corrections to reflect that: (1) the referee's report purports to be a judicial decision and is hence unconstitutional;[5] (2) none of the exhibits in evidence purport to release KAJ from the obligation to build a pond, which obligation the referee found was created by the April 13, 1987 agreement with the plaintiff, and which survived the delivery of the deed by KAJ to the plaintiff; and (3) any purported release by the plaintiff of KAJ's written obligation to build a pond would have to be in writing because of General Statutes § 52-550, the Statute of Frauds, and that there was no such writing.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any changes in his report or recommendation that judgment enter for the defendants. The plaintiff then filed exceptions to the referee's report pursuant to Practice Book § 439, but the file does not indicate that the plaintiff included a transcript with its exceptions, as required by Practice Book § 439. This means that the referee's findings of fact must stand uncorrected and may not be disturbed. Without a transcript, these findings cannot CT Page 3610 be evaluated to determine whether they find support in the transcript. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." SeeBernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report. Beizer v. Goepfert, 28 Conn. App. 693,706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049
(1992).
The plaintiff also filed objections to the acceptance of the referee's report in accordance with Practice Book § 440. The plaintiff's exceptions and objections repeat the arguments in its motion to correct that the plaintiff did not release the defendants' obligation to construct the retention pond.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440.
Therefore, the first issue in a review of an attorney trial referee's report is generally whether there is support in the record for the referee's factual findings. In this particular case, as noted previously, the referee's findings of facts must be and are accepted in total. However, the facts in this case do not seem to be in dispute, but rather the issue is what inferences or conclusions are to be drawn from the various deeds, mortgages, contracts, etc., that were introduced as exhibits.
In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the second task of the reviewing court is to decide whether "the CT Page 3611 conclusions reached were in accordance with the applicable law."Thermoglaze. Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153
(1991). See also Practice Book § 440; Bernard v. Gershman, supra, 18 Conn. App. 656. In this regard, the referee's conclusions of law are not binding on the court. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court [has] the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.) Dills v. Enfield, supra, 210 Conn. 713. See alsoState Bank of Westchester v. New Dimension Homes of Connecticut,Inc., 38 Conn. App. 491, 497, 661 A.2d 119 (1995) (stating "[a]ny legal conclusions reached by an attorney trial referee have no conclusive effect").
The contract between the plaintiff and the defendants provided that the latter were obligated to build a retention pond on a certain piece of property for the benefit of the plaintiff. The referee concluded, however, that the plaintiff released the defendants from that obligation based on the three reasons referred to previously. The plaintiff points out that none of these documents actually release KAJ. Specifically, the referee gave as his first reason that when Windham deeded its property to Rumar, it did not refer to KAJ's obligation to construct a pond. The referee is referring to a deed from the plaintiff to a third party, Rumar. Although the deed does not mention KAJ, it also does not purport to release the defendants from their obligations.
The second reason is that Windham paid KAJ the full balance of the purchase money mortgage, even thought KAJ had not built the pond, the inference being that Windham released the defendants from its obligations, or otherwise it would have subtracted its cost in building the pool from the balance due KAJ for the purchase money mortgage as was its right under the original agreement with KAJ. Again, there is nothing in writing that specifically releases KAJ. The third reason offered by the referee is the reference by the defendants in their deed to Arnold Peck's obligation to build the pond. Actually, the reference is to Peck and to "any other person," as pointed out by the referee. It is clear that the defendants cannot be relieved CT Page 3612 of their obligation to Windham by virtue of Peck agreeing with KAJ to construct the pond. This simply means that an additional obligor, Peck, was added to the defendants as bearing responsibility for such construction, but there is nothing to indicate that Peck was substituted for KAJ with the written approval of the plaintiff.
In summary, accepting the facts found by the referee, his conclusion that the plaintiff released KAJ from its obligation to construct the pond in question is not based on any explicit written document, but rather on inferences from certain conduct. The attempt to rely on inference based on certain actions by the plaintiff in its relationship with a third party such as Rumar runs contrary to the requirement of the statute of frauds that agreements concerning land must be in writing.[6] In this case, KAJ's obligation to build a pond was an element of the agreement by Windham to purchase the subject parcel from KAJ.
The court finds that the referee's conclusions of law do not follow from his factual findings and that his recommendation for judgment for the defendants therefore cannot be accepted. See Practice Book § 443.
Accordingly, judgment is entered in favor of the plaintiff to recover from the defendants, Joy and Cromie d/b/a KAJ, the sum of $28,000, the cost to the plaintiff of constructing the pond. No evidence was offered by the defendants that this amount incurred by the plaintiff was not a reasonable charge for the construction of the pond.[7] Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 17th day of April, 1996.
William B. Lewis, Judge