[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a dispute between homeowners and their builder. On April 14, 1986, the plaintiffs, John D. Paulus and Carol Paulus, of Wilton, entered into a written contract with the defendant, Cannondale Development Associates (Cannondale), a Connecticut partnership acting by the defendant, Andrew LaSala, Jr., a general partner. Cannondale and LaSala are hereafter referred to as the defendants.
The plaintiffs allege in the first count of their amended complaint dated October 6, 1988, that their signed agreement provided that the defendants would construct a new single family dwelling at 39 Wick End Lane, in Wilton, and convey that property to the plaintiffs for $834,000. The plaintiffs further claim, among other things, that they are entitled to a daily penalty because the work was not completed by January 15, 1987, as agreed to in the contract. Further, the plaintiffs allege that the construction was not performed in a workmanlike manner; that the defendants breached their one year contractual warranties regarding workmanship and a dry basement;[1] that the defendants overcharged them and performed unauthorized work; and that at the closing on May 5, 1987, in addition to receiving the contract price, the defendants refused to convey title until they received an extra $19,388. The plaintiffs claim that they paid this money under duress.
In the second count of the complaint, the plaintiffs claim that defendant LaSala represented that he would work with an experienced builder, but did not do so; that Cannondale never filed a fictitious trade name certificate in violation of General Statutes § 35-1[2]; that the plaintiffs had agreed to pay $834,000 for the land and house, but the defendants demanded and received an additional $19,388; and that the defendants' conduct violated General Statutes § 42-110 (b) et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiffs CT Page 845 allege in the third count of their complaint that the defendants violated General Statutes § 47-116 et seq., the New Home Warranties Act[3], by constructing a home with a number of defects.
The defendants, in their revised answer of April 6, 1994, deny the material allegations of the complaint and deny that they owe any money to the plaintiffs. The defendants also filed seven special defenses. The first special defense states that if the plaintiffs sustained water damage to their basement as they claimed, it was due to the fault and neglect of the swimming pool contractor. The defendants contend in the second special defense that the delay in closing was due to requests by the plaintiffs to modify and change the contract. The defendants claim in the third defense that the plaintiffs accepted the deed and took possession of the subject premises. Therefore, according to the defendants, the plaintiffs are not entitled to any recovery because of "waiver, estoppel and merger." In the fourth special defense, the defendants claim that the plaintiffs accepted all the changes to the contract and paid for all such changes, and are not entitled to any recovery. The defendants contend in their fifth special defense that the plaintiffs are estopped from claiming breaches of warranties because they never gave the defendants the opportunity to inspect and/or cure the alleged defects. In the sixth special defense, the defendants allege that the plaintiffs prevented the defendants from completing the work. In the seventh special defense, the defendants claim that the plaintiffs failed to mitigate damages.
The case was referred to an attorney trial referee, Attorney Michael T. Bologna, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial, and thereafter submitted a report finding the following facts: (1) the defendants obtained a certificate of occupancy in May of 1987 and the closing occurred on May 20, 1987; (2) at the closing, $9,500 was held in escrow until the defendants could complete some items and this money was eventually turned over to the defendants in August of 1987; (3) the work was not performed by the defendants in a workmanlike or timely manner, and the plaintiffs were therefore obliged to hire others to complete the construction in a number of respects including: (a) the front and rear sidewalks . . . $5,869; (b) rough grading . . . $1,500; (c) topsoil . . . $5,000; (d) driveway paving . . . $17,000; (e) addition of Belgian blocks . . . $6,000; (f) family room cabinets . . . $2,400; (g) CT Page 846 cleaning of windows . . . $665; (h) skylight . . . $1,500; (i) water in the basement . . . $6,930; and (j) sanding, scraping and repainting the exterior . . $23,975; (4) the plaintiffs were entitled to legal fees totaling $5,420 because of the delayed closing; (5) the plaintiffs could not recover the $18,600 paid at the closing because they had an option to refuse to make such payment but nevertheless paid the money; (6) the plaintiffs were not authorized to add $5,607 for alleged overcharging because these funds were included in the $18,600 paid at the closing; and (7) the plaintiffs were not entitled to damages for the cost of repitching the rear patio because the defendants only did this work after a disclaimer of any liability or responsibility.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the defendants had breached the contract with the plaintiffs which obligated the defendants to construct the new house in a workmanlike and timely fashion: (2) the exterior painting performed by the defendants also breached the New Home Warranties Act; (3) the defendants' conduct had not violated CUTPA; and (4) the total cost of the damages suffered by the plaintiffs is $82,619, minus the $9,500 they had received previously from the escrow account.
Thus, the attorney trial referee found for the plaintiffs and recommended that they recover from the defendants $73,119, but without prejudgment interest under General Statutes § 37-3a, or CUTPA damages.
Pursuant to Practice Book § 438, the plaintiffs moved to correct the referee's report[4] in several respects: (1) the referee improperly denied recovery of the $18,600 because the demand for this money was unjustified and exceeded the money due pursuant to the contract; (2) the referee improperly denied damages for correcting the pitch of the rear patios; (3) they seek to recover for overcharging by the defendants in the amount of $5,607 for various items; and (4) the plaintiffs reiterate their demand for prejudgment interest.
The referee, in response to this motion to correct, declined to change his conclusions and recommendations other than his decision to deny prejudgment interest. The referee found that the plaintiffs were entitled to General Statutes § 37-3a
prejudgment interest on $38,424. This amount represents the amount of their damages for breach of contract based on poor workmanship. According to the referee, interest would begin on CT Page 847 July 6, 1987, when the defendants announced that they would do no further work at the subject premises, and terminate on April 28, 1993, the beginning of the trial of this action.
The defendants also moved to correct the referee's report as follows: (1) the claim based on exterior painting should be rejected because the contract specified stain and the house was painted only because the plaintiffs insisted; (2) after the closing, the defendants returned several times to the premises in order to rescrape portions of the house where the paint was peeling; (3) in August of 1987, the plaintiffs refused to permit the defendants' painter to return to the premises for additional rescraping and repainting; (4) the one year warranties expired on May 20, 1988, but the plaintiffs hired painters for exterior repainting in June of 1988; (5) the defendants had paved the driveway as specified in the contract but the plaintiffs increased the area of the upper driveway and raised the grade of their front yard alongside the driveway, thus increasing the cost of paving the driveway; (6) the corrective work on the driveway was begun after the one year contractual and statutory warranties had expired on May 20, 1988; and (7) the water problem in the basement was not caused by the defendants but rather by leaders and gutters that were installed by contractors hired directly by the plaintiffs.
In response to the defendants' motion to correct, the referee agreed with some of the factual claims made by the defendants but declined to change his conclusions and recommendations regarding breach of statutory warranties and breach of contract on the part of the defendants. The referee reiterated his finding that the wet basement constituted a breach of the New Home Warranties Act, and restated that the plaintiffs were justified in having their wet basement repaired immediately by other contractors and in not waiting for or using the defendants because the relationship between the parties had deteriorated.
Pursuant to Practice Book § 439, the plaintiffs filed exceptions[5] to the referee's report. The plaintiffs reiterate their contention that: (1) they should recover the $18,600 that they paid to the defendants at the closing because there was no consideration for this payment and it was made under the threat to not pass title; and (2) prejudgment interest on $38,424 should continue to the date of judgment and should not terminate on the date that the trial began because they were deprived of the use of their money until such time as judgment entered. CT Page 848
The defendants filed amended exceptions dated April 17, 1997. The defendants claim that: (1) the plaintiffs did not permit them to enter upon the premises in order to do some repainting; (2) the defendants had paved the driveway in accordance with the contract; (3) the grade of the driveway had been elevated which required the defendants to spend extra money on paving; (4) notice to the defendants of water in the basement was given only after the plaintiffs hired their own workers; and (5) the wet basement was caused by leaders and gutters and perimeter pipes installed by the plaintiffs and not through any fault of the defendants.
The plaintiffs did not file objections to the referee's report. The defendants, however, filed such objections to the acceptance of the referee's report pursuant to Practice Book § 440.[6] The objections reiterate the argument contained in their exceptions, specifically, that: (1) the defendants are not liable to the plaintiffs for the cost of sanding and repainting the exterior of the house at a cost of approximately $24,000; (2) the plaintiffs enlarged the paved portion of the driveway and added Belgian block curbing, and that they are not liable to the plaintiffs in the amount of $17,000; (3) the defendants are not liable to the plaintiffs for a delayed closing: (4) the plaintiffs are not entitled to damages with respect to a wet basement in the amount of $6,930; and (5) the plaintiffs are not entitled to prejudgment interest.
A trial court's scope of review of an attorney trial referee's report regarding the facts of a given case is discussed in Elgar v. Elgar, 238 Conn. 839, 679 A.2d 937 (1996): "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49. CT Page 849
This court has two tasks to perform in reviewing an attorney trial referee's report. Elgar v. Elgar, supra, 238 Conn. 845. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
The factual issues determined by the referee involve whether one or both of the parties breached the April 14, 1986 contract. The referee found that for the most part, the plaintiffs had proved that the defendants had breached the warranties contained in the contract and in the New Home Warranties Act. A review of the transcript indicates that these findings are supported by the evidence.[7]
Both parties seek in their motions to correct, exceptions and objections to substitute their version of the facts concerning breach of the statutory and contractual warranties for the referee's findings. These requests would require the court to retry the case and reexamine the credibility of the witnesses. This is not permitted. Argentinis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991).
The defendants point out that the transcript contains evidence that is contrary to the referee's findings. It is obvious, however, and the referee said so explicitly in connection with the exterior painting, that he chose to believe testimony to the contrary presented by the plaintiffs. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court." Nor'easter Group, Inc. v.Colossale Concrete, Inc., 207 Conn. 468, 473, 542 A.2d 692
(1988).
Moreover, findings of fact in a contract action should be overturned "only when they are clearly erroneous." The recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Wilcox Trucking, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 425, 657 A.2d 1250, cert. denied, 214 Conn. 804, CT Page 850573 A.2d 318 (1989).
Additionally, "[g]reat deference is given to the trial court's findings because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v. Goepfert, 28 Conn. App. 693, 704-05,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786
(1993). A reviewing court should not retry the facts or assess the credibility of the witnesses. The "finder of fact is in a better position to determine the credibility of the witnesses and the weight to be accorded their testimony." Id., 706. Moreover, the trial court is not bound by the uncontradicted testimony of any witness. Id. Thus, the facts found by the referee are accepted because they find support in the record.
The court, in reviewing an attorney trial referee's report, in addition to insuring that the factual findings are supported by the evidence introduced at trial, must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Inc.,23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991); see also Bernard v. Gershmann,18 Conn. App. 652, 656, 559 A.2d 829 (1989).
This inquiry into whether the conclusions of a referee follow legally and logically from the applicable law involves the objections to the report filed by the defendants. In this present case, the objections attack the referee's findings of fact. It is axiomatic, however, with respect to the filing of objections, that Practice Book "[s]ection 440 . . . cannot be used to attack findings of fact." Iroquois Gas Transmission System v. Mileski,43 Conn. App. 47, 52, 682 A.2d 140 (1996). Here, the defendants' objections all relate to factual findings such as: whether the wet basement is the responsibility of the defendants; whether prejudgment interest should be awarded; whether problems with the exterior painting are the responsibility of the defendants; whether the driveway was adequately paved; and whether the delayed closing is their responsibility.
There are no issues regarding application of the law to the facts of this case except for the matter of prejudgment interest under General Statutes § 37-3a[8]. The remainder of the case involves facts, credibility of witnesses and details of a dispute between a building contractor and his customers. An award of CT Page 851 prejudgment interest is clearly within the referee's discretion. "The person best able to make this equitable determination is the attorney trial referee who heard the case and is most familiar with the facts." Spearhead Construction Corp. v. Bianco,39 Conn. App. 122, 135, 665 A.2d 86, cert denied, 235 Conn. 928,667 A.2d 554 (1995). "[T]he determination of whether interest pursuant to § 37-3a should be awarded is a question for the trier of fact." Foley v. Huntington Co., 42 Conn. App. 712, 738,682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).
The issue in this present action, however, is whether such prejudgment interest can terminate when the trial starts or should run until judgment enters. Although the cases point out that there have been disputes over when prejudgment interest starts to accumulate, the court has not located any case involving when it should terminate. The cases refer to interest running until a judgment enters. This is logical because the statute talks of "prejudgment" interest. In Blakeslee ArpaiaChapman, Inc. v. EI Constructors, Inc., 239 Conn. 708,735 A.2d 506 (1997), the court referred to only two issues: whether a party had wrongfully detained money due the other, and the date when such wrongful detention began. One could infer that there are no other issues to resolve regarding prejudgment interest and that such interest should run until judgment. Also, if the plaintiffs are entitled to reimbursement for money wrongfully withheld, such wrong does not stop when the trial begins, but continues until the date of judgment.
It is within the purview of this court's authority to reject the referee's conclusion about when prejudgment interest should terminate. "[A] referee's determination of law in his or her report are not binding on the court. . . . The trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.)Dills v. Enfield, 210 Conn. 705, 713, 557 A.2d 517 (1989); see also State Bank of Westchester v. New Dimension Homes ofConnecticut, Inc., 38 Conn. App. 491, 497, 661 A.2d 119 (1995) (stating "[a]ny legal conclusions reached by an attorney trial referee have no conclusive effect").
Thus, although the factual finding that prejudgment interest is due is accepted, the determination of law that interest should terminate when the trial started is rejected. Except as to the date when interest should terminate, no material error in the CT Page 852 referee's report has been found, and there is no other reason for rendering the report unacceptable. Practice Book § 443.
Hence, judgment is entered in favor of the plaintiffs against the defendants, Cannondale and LaSala, in the amount of $73,119, plus prejudgment interest on $38,424 at the rate of 10% per year. Prejudgment interest from July 6, 1987, to the date of the judgment amounts to $40,494.40. Thus, a total judgment is entered in favor of the plaintiffs for $113,613.40.
Costs are to be taxed in favor of the plaintiffs by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 412.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of January, 1998.
William B. Lewis, Judge