[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR JUDGMENT ON REPORT (#116)
This is yet another case related to a lengthy, complex and acrimonious litigation. Little benefit can result from a careful litany of the facts surrounding the overall matter. In brief, the plaintiff filed a three-count complaint in the above captioned matter on November 4, 1997, sounding in abuse of process and tortious interference with contract. The plaintiff alleges that the defendants violated a court ordered stipulation of alternative dispute resolution via arbitration. Specifically, the plaintiff claims that the defendants violated the order by amending a related lawsuit and initiating another related cause of action beyond the scope of the arbitration agreement.
The above-captioned matter was tried before Attorney Trial Referee Mary E. Sommer on January 12, 1999, March 31, 1999, and April 6, 1999. The parties submitted post trial briefs dated July 13, 14, and 20, 1999. On November 26, 1999, the plaintiff submitted a motion to correct pursuant to Practice Book § 19-12[1] which was not opposed by the defendant. The attorney trial referee returned decision on that motion on January 26, 2000, in which she made some changes and additions to the factual findings requested by the plaintiff, but she did not alter her ultimate conclusions. On February 25, 2000, the defendants moved for acceptance and judgment on the ATR report pursuant to Practice Book § 19-16 and the plaintiff simultaneously filed an objection pursuant to Practice Book § 19-14. On March 1, 2000, the defendants filed a reply to the plaintiff's objection.
The attorney trial referee found the following facts: (1) the binding ADR stipulation between the plaintiff and the defendants was intended to encompass all then existing disputes; (2) paragraphs 1, 2, 3, 14 and 16 of Exhibit B (the stipulation) are incorporated as binding facts; (3) the stipulation was agreed to and signed by the parties on February 26, 1997; (4) On February 28, 1997, the court, Tierney, J., entered order on the stipulation; (5) neutral arbiter Harold Schramm was appointed and commenced arbitration following referral which included 28 days of evidence; (6) Arbiter Schramm issued a 10 page report on August 17, 1998; (7) Prior to and during such arbitration, the defendants represented KLH Associates — a partnership composed of Katsaros, Handrinos, and the plaintiff, (8) the defendants represented KLH Associates in a lawsuit against the Sotiropoulos to recover $45,832.05 remaining on a 1987 note; (9) That action was already pending as of the February 26, 1997 stipulation; (10) the defendants also represented Handrinos and Katsaros in separate lawsuits against the plaintiff CT Page 8675 alleging unauthorized release of a mortgage which violated their partnership rights; (11) In the Katsaros-Lathouris litigation, commenced in 1996, Sotiropoulos testified that he gave the plaintiff $25,000 in satisfaction of the debt and the defendants amended the complaint in August 1997 to allege receipt of the $25,000; (12) Also in August 1997, the defendants brought suit on behalf of Handrinos against the plaintiff-the claim being essentially the same as the Katsaros claim; (13) The plaintiff filed a motion to dismiss the Handrinos suit arguing that the issues in dispute were subjected to binding arbitration; (14) On November 13, 1997 the court, Mintz, J., stayed the Handrinos case sending it to arbitration and finding that the underlying claim on the 1987 note preexisted the arbitration stipulation in this case and was known by all; (15) In KLH v. Sotiropoulos, the plaintiff denied receiving any money and arbiter Michael Gene Clear found that the Sotiropoulos failed to carry their burden of proving accord and satisfaction; (16) the court, Lewis,J., entered judgment on Arbiter Clear's decision on February 24, 1998; (17) the plaintiff filed for summary judgment in the Handrinos case which was unopposed by the defendants; (18) the court, Lewis, J., entered judgment for the plaintiff based on collateral estoppel; (19) Handrinos refused to file a Withdrawal of Action and the case was dismissed pursuant to Practice Book § 14-3.
Based on those findings, of fact, the attorney trial referee in this case made the following findings under the heading Conclusions of Law: (1) failure to prove that the plaintiff received money in satisfaction of the mortgage in KLH v. Sotiropoulos does not give rise to a claim for abuse of process; (2) the defendants did violate the court ordered arbitration stipulation, but that the plaintiff waived relief from the violation when he opposed inclusion of the Katsaros and Handrinos claims; (3) absence of a defense by failure to file an opposition to a summary judgment in the Handrinos case does not constitute abuse of process; (4) the separate litigations conducted outside of the arbitration forum may have caused the plaintiff added burden and expense, but did not establish a basis of recovery on the grounds of tortious interference with contract; and (5) therefore, there is no basis for the recovery of any damages including those for humiliation, embarrassment, emotional distress and attorneys' fees.
"[A] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court. . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted; internal quotation marks omitted.) Elgarv. Elgar, 238 Conn. 839, 679 A.2d 937 (1996). "The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon CT Page 8676 the credibility of witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49. Thus, the twofold inquiry of a court when reviewing an attorney trial referee's report is first to determine whether the "referee's findings of fact were supported by the evidence. . . . [And second, to ascertain whether] the conclusions drawn [from the findings of fact] were legally and logically correct. . . ." Elgar v.Elgar, supra, 238 Conn. 845.
The plaintiff asserts that the attorney trial referee's report should not be accepted based on: (1) the conclusions of facts and law were improper based on the subordinate facts; (2) the ATR should have made all the changes requested by the plaintiff in his motion to correct; (3) the ATR had no authority to make conclusions of law as entitled in the report; and (4) the application of the law was erroneous.
As to the plaintiff's first and second contentions, this court finds that no clearly erroneous mistake has been made with regard to the underlying facts. The "finder of fact is in a better position to determine the credibility of the witness and the weight to be accorded their testimony." Beizer v. Goepfert, 28 Conn. App. 693, 706,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed. 786 (1993). A review of the transcript indicates that nowhere is there a lack of support for the attorney trial referee's factual findings. Therefore, as to the subordinate factual findings, this court accepts the attorney trial referee's report.
Regarding the plaintiff's argument that the ATR improperly made "conclusions of law," this court finds the plaintiff's claim to be without merit. "[A]ttorney trial referees have limited roles as fact finders whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . Any legal conclusions reached by an attorney trial refereehave no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Citations omitted; emphasis added; internal quotation marks omitted.) State Bank of Westchester v. New Dimension Homes,38 Conn. App. 491, 497, 661 A.2d 119 (1995). Applied here, a subheading entitled "Conclusions of Law" in the attorney trial referee's submission does not automatically invalidate the report even though an ATR's role is CT Page 8677 strictly a fact finder. This court, as the effective arbiter on the law relating to the case, can take these conclusions as proposals or suggestions in making its ultimate legal determinations. Therefore, the plaintiff's contention as to the ATR improperly making legal conclusions fails.
"Abuse of process occurs when someone uses a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . [T]he fact that there existed an incidental motive of spite or an ulterior purpose of benefit . . . is not sufficient to constitute a cause of action for abuse of process." (Internal quotation marks omitted.) Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 720,627 A.2d 374 (1993). "[T]he gravamen of the action for abuse of process is the use of a legal process. . . against another primarily to accomplish a purpose for which it is not designed. . . . [P]rimarily is meant to exclude liability when the process is used for the purpose for which it is intended. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Mozzochi v. Beck, 204 Conn. 490, 494,529 A.2d 171 (1987). Accordingly, the Connecticut Supreme Court has concluded "that although attorneys have a duty to their clients and to the judicial system not to pursue litigation that is utterly groundless, that duty does not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation. Any other rule would ineluctably interfere with the attorney's primary duty of robust representation of the interests of his or her client." Id., 497. Applied here, the attorney trial referee did not make an error in her factual findings based on the evidence and testimony. Indeed, the attorney trial referee found that both the Handrinos and Katsaros claims stated facts, which if proven to be true, would establish liability against the plaintiff. Despite the history of bad blood between the parties, there is no evidence that the attorney trial referee could have used to base a finding of misuse of legal process on the part of the defendants. It had already been found, and was incorporated into the attorney trial referee's findings, that the Handrinos and Katsaros actions arose out of a 1987 mortgage and note, both being virtuous precursor actions to the current arbitration and referenced matter. Therefore, this court accepts the ATR's report concluding that the plaintiff's abuse of process claims fail.
The Supreme Court "has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . [They have held, however, that] not every act that disturbs a contract or business expectancy is actionable. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the CT Page 8678 defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . ." (Citations omitted; internal quotation marks omitted.) Daley v. AetnaLife Casualty Co., 249 Conn. 766, 805, 734 A.2d 112 (1999). Here, the attorney trial referee properly concluded that there is no factual evidence that the defendant could use to establish a basis for recovery on the grounds of tortious interference with contract. In addition to lack of the necessary facts required to support this cause of action, the plaintiff's main legal argument behind the third count does not present evidence of tortious interference with the arbitration agreement. The plaintiff contends that the defendant's conduct added extra burden and expense as well as humiliation. However, the attorney trial referee correctly pointed out that such costs and embarrassment were the result of the whole litigation, not just specific processes that occurred within or without the current arbitration. Moreover, as articulated in the attorney trial referee's report, the plaintiff brought some of the added expense and burdens on himself when he refused the inclusion of the Handrinos and Katsaros claims. Therefore, the court accepts the ATR's report with respect to the plaintiff failing to present evidence to sustain tortious interference with contract.
For all the reasons stated above, the court pursuant to Practice Book § 19-17, accepts the report of the trial attorney referee and renders judgment therewith.
KARAZIN, J.